**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THE LINCOLN ELECTRIC COMPANY ) | |
| 22801 ST. CLAIR AVENUE ) | |
| CLEVELAND, OH 44117, and ) | |
| ) | |
| LINCOLN GLOBAL, INC. ) | Civil Action No. |
| 9160 NORWALK BLVD., ) | |
| SANTA FE SPRINGS, CA 90670 ) | (JURY TRIAL DEMANDED) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HARBOR FREIGHT TOOLS USA, INC. ) | |
| 26541 AGOURA ROAD ) | |
| CALABASAS, CA 91302, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

For their complaint, The Lincoln Electric Company and Lincoln Global, Inc. (collectively "Lincoln"), allege and aver as follows:

**NATURE OF ACTION**

1.      This is a civil action against Lincoln's competitor, Harbor Freight Tools USA, Inc. (herein "HFT").  HFT has recently launched a new line of welders that copy Lincoln's patented technology.  In addition, HFT has unfairly competed against Lincoln by advertising its welders in deceptive and misleading ways, such as by falsely advertising its welders in connection with the colors red and black, a color combination that Lincoln has used as distinctive trade dress for its welders for over fifty years.  As set forth below, the unlawful acts of HFT constitute patent infringement, federal unfair competition and false designation of origin,

violations of the Ohio Unfair and Deceptive Trade Practices Act, and common law unfair competition.  Lincoln seeks monetary and injunctive relief.

## PARTIES

2.     Lincoln Global, Inc. ("Lincoln Global") is a corporation organized and existing under the laws of Delaware, with a principal place of business at 9160 Norwalk Blvd., Santa Fe Springs, CA 90670.  Lincoln Global possesses extensive technical information and know-how relating to the development, manufacture and sale of welding products and supplies, and is the owner of a large portfolio of intellectual property, including certain patents related to welding technology and trademark registrations.

3.     The Lincoln Electric Company ("Lincoln Electric") is a sister company of Lincoln Global and is a corporation organized and existing under the laws of Ohio.  Lincoln Electric has a principal place of business at 22801 St. Clair Ave., Cleveland, OH 44117.  Lincoln Electric designs, develops, manufactures, and sells welding products and accessories in the United States, including this judicial district.  Lincoln Electric has an exclusive license in the United States to Lincoln Global's patents and trademarks, including the patents and trademarks discussed below.

4.     Upon information and belief, HFT is a California company, having a place of business at 26541 Agoura Road, Calabasas, California 91302.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction of this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338 and 1367, and 35 U.S.C. §§ 271 and 281.

6.     This Court has personal jurisdiction over HFT pursuant to the provisions of the Ohio Long Arm Statute, O.R.C. § 2307.382, and the laws of the United States.  HFT maintains an established distribution network for offering for sale, selling and distributing products

throughout the Northern District of Ohio, including products that infringe the United States patents identified in this Complaint. HFT's actions as alleged in this Complaint have caused and continue to cause tortious injury to Lincoln and have enabled HFT to wrongfully derive substantial revenue from activities within this State.  HFT has numerous regular and established places of business in this district including those listed in paragraph 8.  Further, upon information and belief, HFT derives substantial revenue from activities within this state and judicial district, and has sold a substantial amount of products into this state and judicial district, either directly or through third parties, including at least the products that infringe Lincoln's patents.

7.      HFT has voluntarily and purposefully placed its products into the stream of commerce with the expectation that they will be purchased and/or used in this State and District.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because HFT transacts and does business in this district, and a substantial part of the events giving rise to this action occurred in this district.  HFT has committed acts of infringement in this district.  Further, HFT has numerous regular and established places of business in this district.  For example, HFT has retail locations at each of the following locations:

- 6272 Pearl Road, Parma Heights, OH 44130

- 4646 Great Northern Blvd., North Olmsted, OH 44070

- 34600 Vine Street, Willowick, OH 44095

- 5308 Detroit Road, Sheffield Village, OH 44035

- 9364 State Route 14, Streetsboro, OH 44241

- 990 North Court Street, Medina, OH 44256

- 1581 Marion Mt. Gilead Road, Marion, OH 43302

- 526 Lexington Springmill, Mansfield, OH 44906

- 1757 Tiffin Avenue, Findlay, OH 45840

- 2100 Harding Hwy, Ste. 21, Lima, OH 45804

- 3333 Manchester Road, Ste. 18, Akron, OH 44319

- 2901 Whipple Avenue NW, Canton, OH 44708

- 2563 S. Reynolds Road, Toledo, OH 43614

- 4925 Jackman Road, Ste. 63, Toledo, OH 43613

- 6000 Mahoning Avenue, Ste. 20, Austintown, OH 44515

- 1756 North Road SE, Warren, OH 44484

9.      HFT has sold or offered for sale products that infringe Lincoln's patent and trademark rights in one or more of the foregoing locations within this district.

10.      Further, HFT has distributed its misleading advertising within this district, including at one or more of the foregoing retail locations.

## FACTS

### Lincoln's Patent Rights

11.      Lincoln is the world leader in the design, development and manufacture of welding machines, welding guns, welding power sources, welding consumables, plasma cutting systems, and welding training systems, among other things.  Because of Lincoln's innovation efforts over more than a century, Lincoln is a leading supplier of welding products worldwide, selling to all categories of consumers, including retail, industrial, and professional customers and educational institutions.

12.      On December 31, 2013, United States Patent No. 8,618,441 for "Output control for auto-reconnect welding/cutting equipment" ("the '441 Patent") was duly and legally issued

by the U.S. Patent and Trademark Office.  A true and correct copy of the '441 Patent is attached hereto as Exhibit A.

13.  By assignment from the inventors, Lincoln Global is the sole owner of the '441 Patent.  The assignments have been recorded with the U.S. Patent and Trademark Office against the '441 Patent at Reel/Frame 043991/0487.

14.  Lincoln Global and Lincoln Electric hold all substantial rights in the '441 Patent, including the rights to make, use, offer for sale, sell and import into the United States, and have the right to sue for infringement of the '441 Patent.

15.  On September 4, 2012, United States Patent No. 8,256,659 for "Enclosure With Integral Wire Reel Support" ("the '659 Patent") was duly and legally issued by the U.S. Patent and Trademark Office.  A true and correct copy of the '659 Patent is attached hereto as Exhibit B.

16.  By assignment from the inventors, Lincoln Global is the sole owner of the '659 Patent.  The assignments have been recorded with the U.S. Patent and Trademark Office against the '659 Patent at Reel/Frame 024309/0650.

17.  Lincoln Global and Lincoln Electric hold all substantial rights in the '659 Patent, including the rights to make, use, offer for sale, sell and import into the United States, and have the right to sue for infringement of the '659 Patent.

## The Accused '441 Welders

18.  On or around August 2017, HFT launched a new line of welders under the mark VULCAN.

19.    In connection with its launch of the VULCAN line of welders, HFT widely distributed advertising materials, such as the advertisement attached hereto as Exhibit C hereto (herein the "First Infringing Ad").

20.    HFT's advertising materials show the VULCAN welders are intended to directly compete with welders offered by Lincoln.

21.    The VULCAN line of products includes several models of electric arc welders that violate Lincoln's patent rights.

22.    Specifically, the PROTIG™ 200, MIGMAX™ 215, OMNIPRO™ 220, and PROTIG™ 165 (herein the "Accused '441 Welders") meet each and every limitation of one or more claims of the '441 Patent.

23.    With reference to claim 1 of the '441 Patent as an example, as evidenced by, for example, the owner's manuals published by HFT, each of the Accused '441 Welders is an auto-reconnect welding device capable of accepting multiple electrical input power types, one at a time, and generating a range of selectable output current levels associated with the connected input power type, resulting in no more than the rated current of a circuit protection component associated with the input power type being drawn by the welding device at maximum output current.

24.    Further, to determine the range of selectable output current levels associated with the connected input power type, each of the Accused '441 Welders senses at least one characteristic of the input power type connected to the welding device.  Specifically, upon information and belief, each of the Accused Welders senses a voltage of the input power type connected to the welding device.

25.     Further, each of the Accused '441 Welders transforms a calibrated range of a user output current control encoder of the welding device (e.g., a knob), in response to said at least one sensed characteristic of the input power type (e.g., the voltage). Upon information and belief, this is performed by a programmable controller within the Accused '441 Welders.

26.     As such, each of the Accused '441 Welders uses a method that infringes at least claim 1 of the '441 Patent, resulting in infringement of Lincoln's patent rights.  Furthermore, the Accused '441 Welders infringe at least claim 15 of the '441 Patent.

27.     As a result of a letter dated September 13, 2017, HFT had notice of its infringement of the '441 Patent no later than September 14, 2017.  Thereafter, HFT continued its infringing activities, and intentionally induced others to practice the method of the '441 Patent, resulting in ongoing damages to Lincoln.

## The Accused '659 Welders

28.     Several models in the VULCAN line of welders also infringe Lincoln's '659 Patent.

29.     Specifically, the MIGMAX™ 140, MIGMAX™ 215 and OMNIPRO™ 220 (herein the "Accused '659 Welders") meet each and every limitation of one or more claims of the '659 Patent.

30.     With reference to claim 13 of the '659 Patent as an example, as evidenced by, for example, the owner's manuals published by HFT and the exemplary photographs below, each of the Accused '659 Welders contains a wire feeder enclosure.



MIG MAX 140



OMNI PRO 220



MIG MAX 215

31.     Further, as evidenced by, for example, the owner's manuals published by HFT and the exemplary photographs above, the wire feeder enclosure of each Accused '659 Welder comprises a front, a rear, a top, and a bottom forming a perimeter of the enclosure.

32.     Further, as evidenced by, for example, the owner's manuals published by HFT and the exemplary photographs above, the wire feeder enclosure of each Accused '659 Welder comprises a first opening opposite a second opening, the first and second openings separated by a width of the enclosure, and are each adapted for receiving a side wall.

33.     Further, as evidenced by, for example, the owner's manuals published by HFT and the exemplary photographs above, the wire feeder enclosure of each Accused '659 Welder comprises a divider wall extending substantially between the front, rear, top, and bottom, and positioned along an intermediate portion of the width of the enclosure to divide an internal volume of the enclosure into a first side and a second side, the first side having an integral spindle shaft location extending outwardly from the divider panel towards the first opening, and

the second side having one or more integral strengthening members extending outwardly from the divider panel towards the second opening.

34.     As such, each of the Accused '659 Welders infringes at least claim 13 of the '659 Patent, resulting in infringement of Lincoln's patent rights.

## **Lincoln's Red Enclosure Trade Dress and Red and Black Trade Dress**

35.     Lincoln is a well-known and highly reputable company who manufactures and sells electric arc welders. Lincoln is one of the primary manufacturers who supply electric arc welders in the United States.

36.     In the welding industry, colors are heavily relied upon by consumers to recognize brands.  For example, among welders and people in the welding industry, when speaking of a plant or shop, often their equipment is referred to as "They use the red stuff [Lincoln]" or "They have nothing but blue [Miller]."

37.     Upon information and belief, if professional welders were given a color reference, most them could tell you the maker, *e.g.,* Red is Lincoln; Blue is Miller, Yellow is Esab.

38.     For example, according to the Trademark Office records, Miller Electric Company holds Registration No. 2,593,346 for the color blue as applied to the top and sides of the casing of goods including electric arc welding machines.

39.      Red is strongly associated with Lincoln due to Lincoln's continuous manufacture, sale and advertising of welders with a red enclosure since 1960.

40.     An example of Lincoln's Red Enclosure Trade Dress is shown below:



41.     The Red Enclosure Trade Dress was registered with the United States Patent and Trademark Office on November 19, 2002 for use in connection with electric arc welders. The registration number for this trademark is 2,650,903 (herein the "'903 Registration").

42.     The foregoing registration is valid and subsisting.  A copy of the Certificate of Registration for the '903 Registration is attached as Exhibit D.

43.     The right to use the trademark of the '903 Registration is now incontestable pursuant to 15 U.S.C. § 1065.

44.     Together with the Red Enclosure Trade Dress, for at least twenty years, Lincoln has consistently used the color black in combination with the color red in connection with the sale and advertising of its welders.  An example of the Red and Black Trade Dress is shown in paragraph 40 above.  A further example of the Red and Black Trade Dress is shown below:



45.    On May 1, 2012, the United States Patent and Trademark Office issued Registration No. 4,134,159 ("'159 Registration") for the following design, for use in connection with, among other goods, electric arc welders:



46.    The foregoing registration is valid and subsisting.  A copy of the Certificate of Registration for the '159 Registration is attached as Exhibit E.

47.    On December 9, 2014, the United States Patent and Trademark Office issued Registration No. 4,653,173 ("'173 Registration") for the following stylized word mark, for use in connection with promotional sponsorship of sports and athletic competitions, tournaments, exhibitions, events, athletic programs and activities, and automobile races and exhibitions:



48.     The foregoing registration is valid and subsisting.  A copy of the Certificate of Registration for the '173 Registration is attached as Exhibit F.

49.     On December 9, 2014, the United States Patent and Trademark Office issued Registration No. 4,653,172 ("'172 Registration") for the following stylized word mark, for use in connection with financial sponsorship of sports and athletic competitions, tournaments, exhibitions, events, athletic programs and activities, and automobile races and exhibitions:



50.     The foregoing registration is valid and subsisting.  A copy of the Certificate of Registration for the '172 Registration is attached as Exhibit G.

51.     On June 28, 2005, the United States Patent and Trademark Office issued Registration No. 3,007,374 ("'374 Registration") for the following stylized word mark, for use in connection with distributorship services in the field of electric arc welders, plasma cutters and components therefor; promotional services for the goods and services of others in the field of electric arc welders, plasma cutters and components therefor, namely, preparing and distributing promotional and merchandising materials for others:



52.     The foregoing registration is valid and subsisting.  A copy of the Certificate of Registration for the '374 Registration is attached as Exhibit H.

53.     Over many years, Lincoln has invested considerably in the advertisement and promotion of its welders, the vast majority of which prominently feature the Red Enclosure Trade Dress and the Red and Black Trade Dress.  Advertisements showing the red enclosures, and the red/black color combination have appeared in various nationally distributed trade magazines, newspapers, periodicals and have also appeared at trade shows, welding events and on market displays at retail stores.

54.     Further, Lincoln has invested substantial time and money promoting the Red Enclosure Trade Dress and Red and Black Trade Dress online, such as on its website and in social media, such as on Facebook, Twitter and YouTube.  For example, the following image is prominently displayed on Lincoln's website,  www.lincolnelectric.com:



55.     Lincoln has sold a substantial number of welders per year in the United States bearing the Red Enclosure Trade Dress and the Red and Black Trade Dress.

56.     As shown in the example advertisements attached hereto as Exhibit I, Lincoln's marketing strategy over the years has been to promote Lincoln's Red Enclosure Trade Dress and Red and Black Trade Dress to obtain an awareness in the marketplace that a welder with a red enclosure or a combination of red and black is a Lincoln welder.

57.     Upon information and belief, Lincoln has achieved its goal in educating customers and potential customers that the color red and the red/black color combination is associated with Lincoln welders.

58.     Upon information and belief, Lincoln has achieved its goal of creating a strong association between red enclosures and the red/black color combination and Lincoln's welders, and the Red Enclosure Trade Dress and Red and Black Trade Dress have become distinctive trademarks of Lincoln.

59.     This fact is supported by feedback from customers, potential customers and competitors.  Indeed, Lincoln recently hosted a meeting of the Pipeliners Union 798 United Association, which was attended by over one-thousand people.  These customers travelled from

places as far away as Louisiana and Texas, some just to have the opportunity to snap a picture at Lincoln's factory in Cleveland, Ohio:



60.     Lincoln's welders in the Red Enclosure Trade Dress and Red and Black Trade Dress are advertised and sold within this District and elsewhere throughout the United States.

61.     Because of the continuous and systematic usage of the Red Enclosure Trade Dress and Red and Black Trade Dress to identify the high-quality welders sold by Lincoln, Lincoln has established an exclusive association in the public's mind with the Red Enclosure Trade Dress and Red and Black Trade Dress as designations of origin associated with Lincoln's products.

62.     The Red Enclosure Trade Dress and Red and Black Trade Dress have significance in the minds of the purchasing public as denoting goods coming from a sole source, Lincoln.

63.     The Red Enclosure Trade Dress and Red and Black Trade Dress have become distinctive as indicators of the products made and sold by a sole source, Lincoln.

64.     Lincoln's Red Enclosure Trade Dress and Red and Black Trade Dress are not functional.

65.     There is a substantial demand for products associated with the Red Enclosure Trade Dress and Red and Black Trade Dress and, therefore, the goodwill and right to sell products under this mark are valuable commercial property rights.

66.     The Red Enclosure Trade Dress and Red and Black Trade Dress, and the goodwill associated with them are of inestimable value to Lincoln.

### Lincoln's Tombstone Trade Dress

67.     Since 1961, Lincoln has made and sold welders in a distinctive tombstone shape. An example of the Tombstone Trade Dress is shown below:



68.     On May 3, 2016, Lincoln obtained U.S. Trademark Registration No. 4,948,982 ("'982 Registration") for the following design, for use in connection with, among other goods, electric arc welders:



69.     The registered mark comprises the external configuration of an arc welder in an overall shape resembling a tombstone.

70.     The foregoing registration is valid and subsisting.  A copy of the Certificate of Registration for the '982 Registration is attached as Exhibit J.

71.     Upon information and belief, Lincoln has achieved its goal of creating a strong association between the Tombstone Trade Dress and Lincoln's welders, and the Tombstone Trade Dress has become distinctive trademark of Lincoln.

72.     Since 1961, Lincoln's welders in the Tombstone Trade Dress have been advertised and sold within this District and elsewhere throughout the United States.

73.     Because of the continuous and systematic usage and promotion of the Tombstone Trade Dress to identify the high-quality welders sold by Lincoln, Lincoln has established an exclusive association in the public's mind with the Tombstone Trade Dress as a designation of origin associated with Lincoln's products.

74.     As one indicia of the iconic nature of Lincoln's Tombstone Trade Dress, Lincoln's AC/DC Arc welder was featured in the 1992 hit movie "Home Alone 2 Lost in New York," in the scene where the protagonist, Kevin, zaps the bad guy, Marv:



75.     As shown above, the product placement in Home Alone 2 Lost in New York prominently featured not only the Tombstone Trade Dress, but also the Red Enclosure Trade Dress and Red and Black Trade Dress, and also prominently displayed "LINCOLN ELECTRIC."

76.     Millions of welders have been sold by Lincoln in the Tombstone Trade Dress.

77.     The Tombstone Trade Dress has significance in the minds of the purchasing public as denoting goods coming from a sole source, Lincoln.

78.     The Tombstone Trade Dress has become distinctive as an indicator of the products made and sold by a sole source, Lincoln.

79.     Lincoln's Tombstone Trade Dress is not functional.

80.     There is a substantial demand for products associated with the Tombstone Trade Dress and, therefore, the goodwill and right to sell products under this mark are valuable commercial property rights.

81.     The Tombstone Trade Dress, and the goodwill associated with it are of inestimable value to Lincoln.

### HFT's Unfair Ads

82.     Upon information and belief, HFT regularly releases into the market print and online advertising for its products.

83.     For example, HFT's website normally features a "monthly ad" containing advertisements for hundreds, if not thousands, of products.

84.     In addition to and/or in connection with its monthly ads, HFT also regularly releases into the market advertisements labeled "Inventory Closeout."

85.     HFT's ads are normally brightly printed with color on paper and bound, like a catalog.

86.     In addition to being available on HFT's website, HFT's ads are also distributed via US Mail to nationwide distribution list, which includes many people residing in this district.

87.     HFT's ads are also distributed at each of its retail locations, including HFT's numerous retail locations in this district, listed above.

88.     Upon information and belief, each flyer typically contains dozens of pages, and contains advertisements for hundreds of products.

89.     On or around the end of August 2017, Lincoln first became aware of First Infringing Ad attached as Exhibit C.

90.     On the bottom half of a 2-page ad for VULCAN welders, the First Infringing Ad shows a comparison under the heading "VULCAN BEATS LINCOLN ELECTRIC."  The comparison shows a VULCAN welder on the left, with an orange enclosure, and a Lincoln welder on the right, with a red enclosure.

91.     At the top of the same page, the First Infringing Ad prominently shows six welders.  The six welders shown across the top half of the page are red.  In fact, they are the same shade of red as the Lincoln welder shown in the comparative advertisement on the bottom right corner of the page.

92.     Although the six welders shown at the top of the page are red, they are <u>not</u> Lincoln welders.

93.     HFT could have printed the First Infringing Ad so that the welders shown across the top half of the page were orange, like the orange VULCAN welder shown in the comparative advertisement at the bottom of the page.  HFT knows that orange and red are two different choices of printing ink since it used the two colors correctly in its comparative ad.

94.     Instead, HFT printed the First Infringing Ad showing VULCAN welders bearing Lincoln's distinctive Red Enclosure Trade Dress and Lincoln's distinctive Red and Black Trade Dress.  Indeed, the shade of red shown across the top half of the page on HFT's infringing welders is the <u>same shade of red</u> used on the genuine Lincoln welder shown on the bottom right corner of the page.

95.     Upon information and belief, HFT made a deliberate choice to apply Lincoln's distinctive Red Enclosure Trade Dress and Lincoln's distinctive Red and Black Trade Dress to the VULCAN products to confuse and mislead customers and/or to trade off the substantial good will associated with the Red Enclosure Trade Dress and Red and Black Trade Dress by consumers.

96.     On or around September 13, 2017, counsel for Lincoln sent a letter to HFT expressing Lincoln's concerns with the First Infringing Ad, and putting HFT expressly on notice of Lincoln's rights in its trade dress.

97.     HFT's response dismissed Lincoln's concerns asserting the issues Lincoln raised were "[p]erhaps . . . attributable to printing and scanning."

98.     Subsequently, Lincoln became aware of the October 2017 Issue of HFT's monthly ad, excerpts of which are attached as Exhibit K (here the "October Ad").

99.     Just like the First Infringing Ad, the October Ad shows a lineup of six VULCAN welders across the top of the page bearing Lincoln's Red Enclosure Trade Dress and Red and Black Trade Dress.

100.    Just like the First Infringing Ad, the October Ad features a comparative ad, comparing an orange VULCAN welder to a red Lincoln welder.

101.    Just like the First Infringing Ad, the VULCAN welder in the comparative ad is orange, but all the VULCAN welders across the top of the page are the same shade of red as the Lincoln welder in the comparative ad.

102.    HFT did not merely re-run its earlier ad.  Instead, changes were made.  For example, instead of "VULCAN BEATS LINCOLN ELECTRIC," the October Ad says, "VULCAN BURNS LINCOLN ELECTRIC."   Further, unlike the First Infringing Ad, the October Ad no longer indicates the COMMANDER 225 is "Coming October 2017."

103.    Thus, despite knowing of Lincoln's concerns, HFT failed to fix the color of the ink used across the top of the page of its ad so that its products would be truthfully represented.

104.    HFT's misconduct has continued into November.

105.    HFT recently released its November 2017 issue of its monthly ad, excerpts of which are attached as Exhibit L (herein the "November Ad").

106.    In the November Ad, HFT raised the prices on several of its welders.  Upon information and belief, HFT's infringement of Lincoln's rights was a significant factor in HFT's ability to raise its prices.

107.    Further, in the November Ad, HFT went back to claiming, "VULCAN BEATS LINCOLN ELECTRIC."

108.    As in the earlier ads, the November Ad shows the VULCAN welder in the comparative ad in orange, with all the VULCAN welders across the top of the page in the same shade of red as the Lincoln welder in the comparative ad.

109.    Further still, in or around late October, HFT released an Inventory Closeout ad, excerpts of which are attached hereto as Exhibit M (herein the "Inventory Closeout Ad.").  The Inventory Closeout Ad does not contain the lineup of six VULCAN welders shown in the HFT ads discussed above, but instead contains one full page of "Super Coupon(s)," each containing comparisons of a Vulcan welder to a competing welder.   Five of the six competing welders shown in the Inventory Closeout Ad are Lincoln welders.  (The remaining welder is presumably made by Miller because it is blue.)

110.    The First Infringing Ad, October Ad, November Ad and Inventory Closeout Ad are collectively referred to herein as the "Unfair Ads."  The comparative statements contained in the Unfair Ads are at least partially false.  For example, all the Unfair Ads state that the VULCAN OMNIPRO 220 has a "memory," and that Lincoln's POWER MIG 220 does not.  That is not true.

111.    Further, HFT's statement that Lincoln's Power Mig 140C lacks advanced arc starting technology is also not true.

112.    Further, it is either false or deliberately misleading for HFT to represent that any of its VULCAN products are part of an "Inventory Closeout" when, in fact, HFT recently raised its prices for such products, and such products are part of a newly launched product line, which, upon information and belief, HFT has no intent to discontinue or otherwise "closeout."

113.    In addition to the foregoing misleading aspects, the Unfair Ads also prominently feature black horizontal rectangles near red horizontal rectangles with white font inside them, in a manner that is suggestive of Lincoln's Red and Black Trade Dress.

114.    Because of all the steps taken by HFT to evoke Lincoln's trade dress, customers are likely to perceive the Unfair Ads as being affiliated with, sponsored or approved by Lincoln.

**HFT's Infringing COMMANDER Trade Dress**

115.    Each of the Unfair Ads features one VULCAN product that looks notably different from the rest of them:  the "COMMANDER 225."  *See e.g.*, Ex. C, First Infringing Ad, upper left-hand corner.

116.    Instead of being rectangularly shaped like the rest of the VULCAN products, the COMMANDER 225 is shaped like a tombstone.

117.    Further, in the Inventory Closeout Ad (Exhibit M), HFT directly compares its tombstone-shaped product to one of Lincoln's products bearing the Tombstone Trade Dress. However, in making this comparison, HFT does not fairly represent Lincoln's product, as discussed above.

118.    Because of HFT's use of the Tombstone Trade Dress, customers are likely to perceive that Lincoln is the origin of the COMMANDER 225, that it is sponsored or approved by Lincoln, and/or that Lincoln is otherwise affiliated with it.

119.     Further, because of HFT's use of the Tombstone Trade Dress, customers are likely to perceive that HFT's products have the characteristics and qualities of Lincoln's products bearing the Tombstone Trade Dress, when in fact, they do not.

120.     On information and belief, all the foregoing actions by HFT are part of a calculated plan to usurp the benefit of Lincoln's decades-long legacy of innovation and quality manufacturing, draw upon the goodwill associated with Lincoln's trade dress rights, unfairly compete with Lincoln, and replace Lincoln's products in the market with cheaper imitations.

### FIRST CLAIM FOR RELIEF
**(Infringement of '441 Patent)**

121.     Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

122.     HFT has been infringing, is infringing, and unless enjoined, will continue to infringe the '441 Patent by making, using, having used, importing, offering to sell, selling, and having sold the Accused '441 Welders in the United States.  The Accused '441 Welders fall within the scope of one or more claims of the '441 Patent.  These actions therefore constitute direct infringement of the '441 Patent.

123.     Further, when the Accused '441 Welders are used by a person preparing to make a weld, the patented method of the '441 Patent is used.  HFT actively and intentionally induces use of the patented method of the '441 Patent by importing, offering to sell, and selling the Accused '441 Welders together with their respective owner's manuals containing instructions for use.  These actions therefore constitute inducement of infringement of the '441 Patent.

124.     Further, HFT offers to sell and sells within the United States the Accused '441 Welders for use in practicing the patented method of the '441 Patent knowing the Accused '441 Welders to be especially made or especially adapted for use in an infringement of the '441

Patent.  The Accused '441 Welders are not a staple article or commodity of commerce suitable for substantial noninfringing use.  These actions therefore constitute contributory infringement of the '441 Patent.

125.    Upon information and belief, HFT has profited from and will continue to profit from its infringing activities.

126.    Lincoln has been and will be damaged by HFT's infringing activities and is entitled to recover damages adequate to compensate it for such infringement, but, in no event, less than a reasonable royalty.  The amount of monetary damages Lincoln has suffered by the acts of HFT set forth above cannot be determined without an accounting.

127.    The harm to Lincoln within this judicial district and elsewhere in the United States resulting from the acts of infringement of the '441 Patent by HFT is irreparable, continuing, not fully compensable by money damages, and will continue unless HFT's infringing activities are enjoined.

128.    HFT's infringing activities relating to the Accused Welders complained of herein make this an exceptional case entitling Lincoln to the recovery of its reasonable attorneys' fees under 35 U.S.C. § 285 or other applicable law.

## SECOND CLAIM FOR RELIEF
### (Infringement of '659 Patent)

129.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

130.    HFT has been infringing, is infringing, and unless enjoined, will continue to infringe the '659 Patent by making, using, having used, importing, offering to sell, selling, and having sold the Accused '659 Welders in the United States.  The Accused '659 Welders fall

within the scope of one or more claims of the '659 Patent.  These actions therefore constitute direct infringement of the '659 Patent.

131.    Upon information and belief, HFT has profited from and will continue to profit from its infringing activities.

132.    Lincoln has been and will be damaged by HFT's infringing activities and is entitled to recover damages adequate to compensate it for such infringement, but, in no event, less than a reasonable royalty.  The amount of monetary damages Lincoln has suffered by the acts of HFT set forth above cannot be determined without an accounting.

133.    The harm to Lincoln within this judicial district and elsewhere in the United States resulting from the acts of infringement of the '659 Patent by HFT is irreparable, continuing, not fully compensable by money damages, and will continue unless HFT's infringing activities are enjoined.

134.    HFT's infringing activities relating to the Accused Welders complained of herein make this an exceptional case entitling Lincoln to the recovery of its reasonable attorneys' fees under 35 U.S.C. § 285 or other applicable law.

## THIRD CLAIM FOR RELIEF

### (Federal Trademark Infringement, 15 U.S.C. § 1114(1), RED ENCLOSURE TRADE DRESS)

135.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

136.    The acts of HFT complained of herein constitute infringement of Lincoln's federally registered Red Enclosure Trade Dress in violation of 15 U.S.C. § 1114(1).

137.    HFT's unauthorized use of the color red on enclosures shown in the advertising and promotion of its competing products falsely designate the origin of HFT's products.

138.    HFT's unauthorized use of the Red Enclosure Trade Dress is likely to cause confusion, cause mistake, and/or deceive the relevant public, including consumers and potential consumers of the parties' respective goods and services, at least as to affiliation, connection, or association of HFT with Lincoln, or as to the origin, sponsorship, or approval of HFT's goods or services by Lincoln.

139.    Upon information and belief, HFT purposely used the Red Enclosure Trade Dress in its Unfair Ads at least in part to deceive, mislead and confuse the public and trade on the substantial fame, reputation and goodwill enjoyed by Lincoln.

140.    The conduct of HFT complained of herein unjustly enriches HFT at Lincoln's expense.

141.    The conduct of HFT complained of herein is likely to injure Lincoln's business reputation.

142.    Because of HFT's infringement of the Red Enclosure Trade Dress, Lincoln's has incurred and continues to incur damages consisting of, among other things, diminution in the value of and goodwill associated with the Red Enclosure Trade Dress.

143.    Unless the acts of HFT are enjoined by this Court, they will continue to cause irreparable injury to Lincoln and to the public for which there is no adequate remedy at law.

144.    As a direct and foreseeable consequence of the actions alleged herein, HFT is liable to Lincoln for the actual damages incurred as a result of the infringement.  Said damages are not yet ascertainable but will be proven at the time of trial.

145.    Upon information and belief, HFT has also profited from the misconduct alleged herein. Lincoln is entitled to disgorgement of such profits.

146.    Upon information and belief, HFT's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Lincoln's rights in the Red Enclosure Trade Dress, and with an intent to trade on Lincoln's vast goodwill in the Red Enclosure Trade Dress.  In view of the egregious nature of HFT's infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**FOURTH CLAIM FOR RELIEF**
**(Federal Trademark Infringement, 15 U.S.C. § 1114(1), TOMBSTONE TRADE DRESS)**

147.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

148.    The acts of HFT complained of herein constitute infringement of Lincoln's federally registered Tombstone Trade Dress in violation of 15 U.S.C. § 1114(1).

149.    HFT's unauthorized use of the Tombstone Trade Dress in the advertising and promotion of its competing products and in the configuration of its welders falsely designates the origin of HFT's products.

150.    HFT's unauthorized use of the Tombstone Trade Dress is likely to cause confusion, cause mistake, and/or deceive the relevant public, including consumers and potential consumers of the parties' respective goods and services, at least as to affiliation, connection, or association of HFT with Lincoln, or as to the origin, sponsorship, or approval of HFT's goods or services by Lincoln.

151.    Upon information and belief, HFT purposely used the Tombstone Trade Dress in its Unfair Ads and in the configuration of its product at least in part to deceive, mislead and

confuse the public and trade on the substantial fame, reputation and goodwill enjoyed by Lincoln.

152.    The conduct of HFT complained of herein unjustly enriches HFT at Lincoln's expense.

153.    The conduct of HFT complained of herein is likely to injure Lincoln's business reputation.

154.    Because of HFT's infringement of the Tombstone Trade Dress, Lincoln's has incurred and continues to incur damages consisting of, among other things, diminution in the value of and goodwill associated with the Tombstone Trade Dress.

155.    Unless the acts of HFT are enjoined by this Court, they will continue to cause irreparable injury to Lincoln and to the public for which there is no adequate remedy at law.

156.    As a direct and foreseeable consequence of the actions alleged herein, HFT is liable to Lincoln for the actual damages incurred as a result of the infringement.  Said damages are not yet ascertainable but will be proven at the time of trial.

157.    Upon information and belief, HFT has also profited from the misconduct alleged herein. Lincoln is entitled to disgorgement of such profits.

158.    Upon information and belief, HFT's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Lincoln's rights in the Tombstone Trade Dress, and with an intent to trade on Lincoln's vast goodwill in the Tombstone Trade Dress.  In view of the egregious nature of HFT' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## FIFTH CLAIM FOR RELIEF
### (Federal Unfair Competition, 15 U.S.C. § 1125(A))

159.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

160.    The acts of HFT complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

161.    HFT's unauthorized use of the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress in the advertising and promotion of its competing products and its unauthorized use of the Tombstone Trade Dress in the configuration of its welders falsely designates the origin of HFT's products.

162.    HFT's unauthorized use of the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress is likely to cause confusion, cause mistake, and/or deceive the relevant public, including consumers and potential consumers of the parties' respective goods and services, at least as to affiliation, connection, or association of HFT with Lincoln, or as to the origin, sponsorship, or approval of HFT's goods or services by Lincoln.

163.    Upon information and belief, HFT purposely used the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress at least in part to deceive, mislead and confuse the public and trade on the substantial fame, reputation and goodwill enjoyed by Lincoln.

164.    The conduct of HFT complained of herein unjustly enriches HFT at Lincoln's expense.

165.    The conduct of HFT complained of herein is likely to injure Lincoln's business reputation.

166.    Because of HFT's infringement of the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress, Lincoln has incurred and continues to incur damages consisting of, among other things, diminution in the value of and goodwill associated with the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress.

167.    Unless the acts of HFT are enjoined by this Court, they will continue to cause irreparable injury to Lincoln and to the public for which there is no adequate remedy at law.

168.    As a direct and foreseeable consequence of the actions alleged herein, HFT is liable to Lincoln for the actual damages incurred as a result of the infringement.  Said damages are not yet ascertainable but will be proven at the time of trial.

169.    Upon information and belief, HFT has profited from the misconduct alleged herein.  Lincoln is entitled to disgorgement of such profits.

170.    Upon information and belief, HFT's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Lincoln's rights in the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress and with an intent to trade on Lincoln's vast goodwill therein.  In view of the egregious nature of HFT's infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### SIXTH CLAIM FOR RELIEF
#### (False Advertising, 15 U.S.C. § 1125(A))

171.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

172.    HFT's VULCAN welders are available in interstate commerce.

173.    Through their commercial advertising or promotion, HFT has misrepresented the nature, characteristics, and qualities of Lincoln's welders, and/or the VULCAN welders, and/or the nature of HFT's prices for such products.

174.    HFT's false commercial messages are material to consumers' decisions to purchase VULCAN welders or to refrain from purchasing Lincoln welders.

175.    Lincoln will or has suffered economic or reputational injury that flows directly from HFT's false advertising in that the false advertising will cause or is causing consumers to withhold trade from Lincoln.

176.    As a direct and foreseeable consequence of the actions alleged herein, HFT is jointly and severally liable to Lincoln for the actual damages incurred as a result of the false advertising.

177.    Upon information and belief, HFT has profited from the misconduct alleged herein.  Lincoln is entitled to disgorgement of such profits.

178.    The actual amount of Lincoln's damages will be proven at trial.

### SEVENTH CLAIM FOR RELIEF
#### (Deceptive Trade Practices)
#### (Ohio Revised Code Chapter 4165)

179.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

180.    The conduct of HFT complained of herein, and specifically, without limitation, HFT's use of the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress, and false or misleading statements and false or misleading associations in its advertising and products constitutes one or more deceptive trade practices in violation of O.R.C. Chapter 4165 inasmuch as such conduct either causes a likelihood of confusion or misunderstanding as to

the source, sponsorship, approval or certification of goods and/or causes a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by another and/or causes a likelihood of confusion or misunderstanding as to the nature, quality or characteristics of HFT's and/or Lincoln's goods.

181.    Further, upon information and belief, HFT has violated O.R.C. Chapter 4165 by making false statements of fact concerning the reasons for, existence of, or amounts of price reductions.

182.    As a direct and foreseeable consequence of the actions alleged herein, HFT is liable to Lincoln for the actual damages incurred because of the deceptive practices.

183.    Upon information and belief, HFT has profited from the misconduct alleged herein.  Lincoln is entitled to disgorgement of such profits.

184.    On information and belief, HFT's violation of O.R.C. Chapter 4165 has caused or will cause Lincoln to suffer economic loss and HFT has gained or is likely to gain a profit as a consequence thereof in amounts not yet determined.

185.    The manner and amount of damage to Lincoln likely to be caused by the infringing activity of HFT complained of herein cannot be fully measured or compensated in economic terms, and so cannot be adequately remedied at law.  As a result, Lincoln will suffer irreparable harm and this irreparable harm will continue unless HFT's infringing activities are enjoined during the pendency of this action and thereafter.

## EIGHTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

186.    Lincoln repeats and realleges each and every paragraph set forth above as if fully set forth herein.

187.    The acts and conduct of HFT alleged herein create a likelihood of confusion between HFT and Lincoln, and constitute intentional and willful unfair competition pursuant to Ohio common law.

188.    HFT's actions are in or affecting commerce.

189.    HFT's actions proximately caused actual injury to Lincoln.

190.    HFT has engaged and continues to engage in this willful and wanton activity, demonstrating a conscious and intentional disregard of and indifference to the rights of Lincoln which HFT knew or should have known was reasonably likely to result in injury, damages, and harm to Lincoln to justify the assessment of punitive damages against it, in an amount to be determined at trial.

191.    HFT's acts of infringement, unless enjoined by this Court, will continue to cause Lincoln to sustain irreparable damage, loss and injury, for which Lincoln has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Lincoln respectfully request that this Court enter judgment in its favor as follows:

1)      declaring that the claims of the '441 and '659 Patents are valid and enforceable;

2)      holding and declaring that by making, using, offering to sell, selling, and/or importing the Accused '441 Welders and Accused '659 Welders, HFT has infringed one or more claims of the '441 Patent and '659 Patent under 35 U.S.C. § 271(a), (b) and/or (c);

3)      holding and declaring that HFT has no legal or equitable defense to Lincoln's allegations of infringement;

4)      accounting and awarding damages incurred by Lincoln as a result of HFT's infringement;

5)      declaring this to be an exceptional case and awarding Lincoln its attorney fees under 35 U.S.C. § 285;

6)      ordering that HFT, its agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with HFT be enjoined and restrained preliminarily and permanently from:

a.      infringing the '441 and '659 Patents;

b.      directly or indirectly infringing the Red Enclosure Trade Dress, Red and Black Trade Dress and Tombstone Trade Dress in any manner, including generally, but not limited to manufacturing, distributing, advertising, selling, or offering for sale and distribution any goods which infringe said trade dress;

c.      using any trademark, trade name, logo, or design that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, HFT's customers, and other members of the public that HFT's welder or their goods originate from Lincoln or that HFT's goods have been sponsored, approved, or licensed by, or are associated with Lincoln or are in some way connected or affiliated with Lincoln;

d.      using any other mark, name, domain name, email address, designation, or indicia of origin that is confusingly similar to the Red Enclosure Trade Dress, Red and Black Trade Dress or Tombstone Trade Dress;

e.     engaging in any conduct which tends falsely to represent, or is likely to confuse, mislead or deceive purchasers, HFT's customers, and other members of the public to believe that HFT is connected with Lincoln or is sponsored, approved, or licensed by Lincoln or is in some way connected or affiliated with Lincoln;

f.     falsely or misleading representing the nature, characteristics, or qualities of its products and services;

g.     falsely or misleading representing the reasons for, existence of, or amounts of price reductions;

h.      otherwise competing unfairly with Lincoln in any manner;

7)   holding and declaring that HFT has unfairly competed and infringed Lincoln's Red Enclosure Trade Dress in violation of Federal and Ohio law;

8)   holding and declaring that HFT has unfairly competed and infringed Lincoln's Red and Black Trade Dress in violation of Federal and Ohio law;

9)   holding and declaring that HFT has unfairly competed and infringed Lincoln's Tombstone Trade Dress in violation of Federal and Ohio law;

10)   holding and declaring that HFT has been unjustly enriched;

11)   ordering, pursuant to 15 U.S.C. § 1118, to deliver up to Lincoln for destruction all goods, labels, signs, prints, packages, wrappers, promotional materials, forms, and advertisements in the possession of HFT bearing the Unfair Ads or images thereof or any other mark or indicia of origin that is confusingly similar to the Red Enclosure Trade Dress, Red and Black Trade Dress or Tombstone Trade Dress;

12)    ordering HFT to recall all infringing goods sold and to issue written notices to all those previously offered goods in the Unfair Ads, and those to whom the infringing welders have been sold, notifying them of the injunction;

13)    ordering HFT to disseminate corrective advertising, at HFT's expense and upon Lincoln's approval, that informs consumers, distributors, retailers, the welding trade and the public of HFT's unlawful conduct and of the judgment requiring HFT to cease such unlawful conduct;

14)    ordering HFT to file with this Court and to serve upon Lincoln, within 30 days after the entry and service on HFT of an injunction, a report in writing and under oath setting forth in detail the manner and form in which HFT has complied with the injunction;

15)    ordering an accounting to determine HFT's profits resulting from its activities and that such profits be paid over to Lincoln, increased as the Court finds to be just under the circumstances of this case;

16)    ordering that Lincoln recover all damages it has sustained because of HFT's activities and that said damages be trebled;

17)    ordering that Lincoln recover exemplary damages;

18)    ordering that Lincoln recover from HFT Lincoln's costs of this action, reasonable counsel fees, and prejudgment and postjudgment interest; and

19)    awarding Lincoln all other and further relief as the Court may deem just and proper under the circumstances.

Dated:  November 6, 2017                    Respectfully submitted,

                                            By: /s/ Georgia Yanchar
                                            John S. Cipolla (Ohio Bar No. 0043614)
                                            jcipolla@calfee.com
                                            Georgia Yanchar (Ohio Bar No. 0071458)
                                            gyanchar@calfee.com
                                            Mark A. Watson (Ohio Bar No. 0083232)
                                            mwatson@calfee.com
                                            CALFEE, HALTER & GRISWOLD LLP
                                            The Calfee Building
                                            1405 East Sixth Street
                                            Cleveland, Ohio  44114
                                            Telephone: (216) 622-8200
                                            Facsimile: (216) 241-0816

<u>LINCOLN'S DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Lincoln hereby demands a jury trial.

Dated:  November 6, 2017

Respectfully submitted,

By: <u>/s/ Georgia Yanchar</u>
John S. Cipolla (Ohio Bar No. 0043614
jcipolla@calfee.com
Georgia Yanchar (Ohio Bar No. 0071458)
gyanchar@calfee.com
Mark A. Watson (Ohio Bar No. 0083232)
mwatson@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816